FILED
JUN 28 2006
CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    ] Case No. 05-55655-ASW
                                         ]
JACQUELINE M. BARRANTES,                 ] Chapter 13
                                         ]
            Debtor                       ]
_____]

MEMORANDUM DECISION ON CREDITOR'S
OBJECTION TO CONFIRMATION

Before the Court is the objection of Angelikka Carter ("Creditor") to confirmation of the chapter 13 plan of Jacqueline Barrantes ("Debtor"). Creditor's objection to confirmation is based on her assertion that Debtor has not pledged all of her disposable income in support of the plan.

Debtor is represented by James J. Gold, Esq., of Gold and Hammes. Creditor appears *in propria persona*.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

STATEMENT OF FACTS

Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on September 9, 2005 ("Petition"). Concurrently

MEMORANDUM DECISION ON CREDITOR'S
OBJECTION TO CONFIRMATION

with the filing of the petition, Debtor submitted a proposed chapter 13 plan. Debtor subsequently filed an amended plan ("Plan") on March 24, 2006.[1] The proposed Plan provides for payment of zero cents on the dollar to general unsecured creditors.[2] Creditor filed an "Objection to Confirmation of Debtor's Plan" ("Objection") on October 21, 2005. Creditor objected to the proposed Plan on the grounds that the Plan does not account for all of Debtor's projected disposable income as required by 11 U.S.C. § 1325(b)(1)(B). The evidentiary hearing on this matter was conducted and completed on May 15, 2006. The only witnesses to testify at the evidentiary hearing were Debtor and Creditor.

In her objection, Creditor contended that: (1) Debtor overstated her child care expenses; (2) Debtor overstated her monthly mortgage payment; (3) Debtor understated her income; and (4) Debtor overstated her transportation expenses or, alternatively, those expenses are not reasonably necessary.

**A. Child Care Expenses**

Creditor asserted that Debtor overstated her monthly child care expenses in calculating her chapter 13 Plan payments. At trial, Debtor introduced into evidence Debtor's "Schedule J - Current Expenditures of Individual Debtors" ("Schedule J") which was filed in Debtor's bankruptcy case along with the Petition.[3] Schedule J

---

[1] The Plan was admitted into evidence as Exhibit A.

[2] Though Debtor has twice amended her chapter 13 plan since the original filing, the proposed payment on general unsecured claims has remained unchanged.

[3] A copy of Schedule J was admitted into evidence as Exhibit D.

lists Debtor's monthly household expenditures. The list includes childcare expenses of $1,075.00 per month.

According to Debtor's testimony, she is a single parent with two children, both of whom have special needs. Debtor testified that, although her child care costs vary from week to week, in a typical week she spends over $200.00 for the care of her son, and $50.00 to $60.00 for the care of her daughter. When these typical numbers are extrapolated to a monthly basis, Debtor's child care costs exceed slightly the $1,075.00 expense stated in Schedule J.[4]

Creditor did not offer any evidence to contradict Debtor's testimony regarding her child care expenses. The Court accepts Debtor's statement of monthly child care expenses in Schedule J of $1,075.00 as correct.

**B. Mortgage Payments**

The objection points out a discrepancy regarding the Debtor's monthly mortgage payment as stated in Schedule J and in the Plan. Schedule J states the mortgage payment as $1,952.00. The Plan, however, shows a monthly mortgage payment of $1,652.00.

Debtor filed a "Declaration of Debtor" ("Debtor's Declaration") on March 17, 2006. Debtor's Declaration states that her monthly mortgage payment is $1,651.64, plus a late charge of $64.48 which, according to Debtor, must be paid routinely because the timing of her payday does not allow her to make the mortgage payment on time.[5] Debtor's Declaration also states that Debtor must pay

---

[4] Weekly expenses of $250.00 (the low end of the range provided by debtor) multiplied by an average of 4.33 weeks per month yields expenses of $1,082.50 per month.

[5] Debtor's Declaration was admitted into evidence as Exhibit B.

MEMORANDUM DECISION ON CREDITOR'S
OBJECTION TO CONFIRMATION
3
Case: 05-55655   Doc# 37   Filed: 06/28/06   Entered: 06/29/06 14:40:01   Page 3 of 10

monthly homeowner's association dues of $280.00.[6] The sum of these expenses is $1,996.12. Accordingly, Debtor asserted that the amount shown on Schedule J is actually understated.

Creditor did not present any additional evidence or argue this point at the hearing. Based on the available evidence, the Court accepts Debtor's statement of her monthly mortgage payments as provided on Schedule J and finds that the amount was not overstated.

## C. Income

Creditor contended that Debtor understated her income for purposes of calculating monthly Plan payments. Debtor's Declaration states that the Debtor is a employed as a special education teacher by the San Jose Unified School District. Debtor introduced into evidence Debtor's "Schedule I – Current Income of Individual Debtors" ("Schedule I") which was filed concurrently with the Petition. Schedule I states that Debtor's gross monthly income is $5,400.00, which, after subtracting payroll deductions, yields net income of $4,500.00.[7] According to Schedule J, Debtor's total monthly expenses are $3,900.00. Simply subtracting Debtor's net income from her monthly expenses yields $600.00 of disposable income. Debtor's proposed monthly Plan payments vary, but the

---

[6] The Plan also shows monthly homeowner's association dues payments of $280.00.

[7] Schedule I states Debtor's "Gross Employment Income" as $5,400.00, less "Payroll Deductions" totaling $900.00 (comprised of $825.00 in payroll taxes and social security and $75.00 in union dues) equals "Net Monthly Employment Income" of $4,500. Exhibit C does not list any other sources of income for Debtor. Thus, the $4,500 figure is also referred to as "Total Monthly Income" and "Grand Total Monthly Income".

average is approximately $591.07.[8] Debtor has also established, as set forth above, that both her monthly child care expenses and monthly mortgage payments are somewhat understated. Accordingly, the Court is satisfied that all of Debtor's disposable income is being pledged toward the Plan.

Creditor also took issue with Debtor's statement of her gross monthly income. Creditor argued that Debtor's gross monthly income is $5,863.00 rather than $5,400.00. In support of this contention, Creditor referred to a document entitled "Employer's Return (Wage Garnishment)" ("Wage Garnishment").[9] The Wage Garnishment is dated August 11, 2005. According to the "Declaration of the Creditor" ("Creditor's Declaration") filed April 6, 2006[10], Creditor obtained a small claims court judgment against Debtor relating to unpaid childcare services. The Wage Garnishment was served on Debtor's employer in an effort to garnish Debtor's wages to fulfill the judgment. The Wage Garnishment was completed by the payroll office of Debtor's employer, San Jose Unified School District, and returned to the Sheriff's Department, which subsequently mailed it to Creditor. It states that, in the last pay period prior to completion of the Wage Garnishment, Debtor had monthly gross earnings of $5,863.00. Creditor cited the Wage Garnishment as

---

[8] The Plan calls for payment of $400.00 per month for 6 months, $500.00 per month for 12 months, and $650.00 per month thereafter, until the Plan ends. The total term of the Plan is 56 months. The average is calculated as follows: (($400.00 * 6) + ($500.00 * 12) + ($650.00 * 38)/56 = $591.07).

[9] The Wage Garnishment was admitted into evidence as Exhibit 2.

[10] Creditor's Declaration was admitted into evidence as Exhibit 1.

MEMORANDUM DECISION ON CREDITOR'S
OBJECTION TO CONFIRMATION
5

evidence that Debtor understated her income.

Debtor explained that the discrepancy between the $5,400.00 figure for gross monthly income stated on Schedule I and the $5,863.00 figure on the Wage Garnishment was due to the fact that the higher figure reflected income she received from teaching summer school in 2005. Debtor's Declaration explains that she will not be teaching summer school in 2006, 2007 or 2008.[11] As a result, she will not receive any additional wages related to teaching summer school in the next three years. Thus, according to Debtor, her gross monthly income is correctly stated on Schedule I as $5,400.00.

The Court accepts Debtor's explanation for the discrepancy regarding her income. The only evidence that Creditor offered suggesting that Debtor understated her income was the Wage Garnishment. Debtor persuaded the Court the $5,863.00 figure, which appears on the Wage Garnishment is not indicative of Debtor's current gross monthly income. Therefore, the Court finds that Debtor's proposed Plan payments were correctly calculated using the $5,400.00 figure.

**D. Vehicle**

During the evidentiary hearing, Creditor argued that Debtor's vehicle is unreasonably expensive to operate and maintain and that Debtor is overstating her transportation expenses. Debtor owns a

---

[11] Debtor's Declaration explains the reasons why Debtor will not be teaching summer school until, at the earliest, 2009. Due to funding shortfalls, San Jose Unified School District will not be offering elementary summer school in either 2006 or 2007. In addition, the district implemented new rules governing the selection of teachers for summer school assignments that precludes Debtor from receiving an assignment for 2008, should the district choose to offer elementary summer school in that year.

2000 Chevrolet Suburban ("Suburban"). Schedule J states Debtor's monthly transportation expenses (except car payments) as $100.00 and automobile insurance expenses as $145.00. No amount is listed for car payments. In her testimony, Debtor explained that she used funds received from her father to purchase the Suburban just prior to filing the Petition. Creditor did not offer any evidence suggesting that Debtor's expenses related to the Suburban are unreasonable or that the expenses are overstated. In fact, $100.00 per month seems to understate the amount that Debtor must spend for such a vehicle on fuel alone. Such a vehicle is well-suited to the transportation needs of Debtor and her two children with special needs. The Court is satisfied that Debtor's expenditures related to her vehicle are both reasonable and properly stated.

II.

APPLICABLE LAW[12]

The relevant provision of the Bankruptcy Code states as follows: "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B). The term "disposable income" is defined as "income which is received by the Debtor and which is not reasonably necessary to be expended for

---

[12] This case was filed on September 9, 2005, prior to the October 17, 2005 effective date of the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Accordingly, the BAPCPA amendments do not apply.

the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A).

### III.

### ANALYSIS

The points raised by Creditor -- that Debtor understated her income and overstated her expenses -- are relevant to whether the proposed Plan provides that all of Debtor's projected disposable income will be applied to make payments under the Plan. If Debtor's expenses were, in fact, overstated, her disposable income would also be higher than indicated, and a greater amount would have to be applied to the Plan. Creditor's objection with respect to the Suburban raises an issue as to whether Debtor's transportation-related expenses are reasonably necessary for the maintenance or support of the Debtor or her family. As discussed above, the Court finds that Debtor accurately stated her income and expenses on Schedules I and J, and these figures were used to calculate Debtor's proposed monthly Plan payment. Based on the evidence presented, the Court holds that the proposed Plan properly applies all of Debtor's projected disposable income pursuant to the requirements of § 1325(b)(1)(B).

To the extent that Creditor has raised an objection with regard to the reasonable necessity of Debtor's transportation expenses, the Court finds that the expenses stated in Schedule J are completely reasonable for the maintenance and support of the Debtor and her dependents. Debtor is a single parent with two dependent children with significant special needs. The expenses claimed by Debtor are in no way extravagant or luxurious. These expenses are reasonably necessary under § 1325(b)(2)(A).

## IV.
## CONCLUSION

Debtor's Plan complies with the requirements of § 1325. Creditor's objection to confirmation of the Plan is overruled. Counsel for the Debtor shall serve upon Creditor and file with the Court a proposed form of order.

Dated June 28, 2006

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

Court Service List

Norma L. Hammes, Esq.
Law Offices of Gold and Hammes
1570 The Alameda #223
San Jose, CA 95126

Jacqueline Marie Barrantes
1000 Weepinggate Ln
San Jose, CA 95136

Angelikka Carter
337 Avenida Nogales
San Jose, CA 95123

Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013

Office of the U.S. Trustee
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004